# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| **ALERON GROUP, LLC,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-1445 |
| ) | |
| **DAVID FERGUSON,** *et al.*, ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

At issue in this diversity dispute arising from a failed hand sanitizer enterprise during the COVID-19 pandemic is a motion for summary judgment filed by Defendants Greg Brown and Jason Gorey (Dkt. 49). Simply put, Plaintiff Aleron Group, LLC ("Plaintiff") has sued Brown and Gorey, as well as a third defendant David Ferguson,[1] alleging that the defendants breached a contract with Plaintiff to distribute hand sanitizer at the beginning of the COVID-19 pandemic. Following motions to dismiss, the only remaining claims against Brown and Gorey are (i) breach of contract, (ii) fraud in the inducement, and (iii) contractual indemnity.[2] Brown and Gorey seek summary judgment and argue that the undisputed facts make clear that judgment must enter against Plaintiff on all three claims as a matter of law. Brown and Gorey's motion has been fully briefed and argued orally and is now ripe for disposition. For the reasons that follow, Brown and Gorey's motion for summary judgment must be granted.

---

[1] Defendant Ferguson is not a party to the motion for summary judgment currently at issue.

[2] Four claims by Plaintiff also remain against David Ferguson, which are neither addressed nor impacted by this Memorandum Opinion: (i) conversion, (ii) negligent misrepresentation, (iii) unjust enrichment, and (iv) breach of contract.

1

**I.**

Because a grant of summary judgment is only appropriate under Rule 56, Fed. R. Civ. P., if there are no genuine disputes of material fact, Local Rule 56(B) directs a party seeking summary judgment to include in the summary judgment submission a specifically captioned section listing in enumerated paragraphs the material facts as to which the moving party contends no genuine dispute exists and to provide citations to the factual record supporting the listed facts. Local Rule 56(B) further instructs a party opposing summary judgment to address each enumerated undisputed fact and to state whether the fact is disputed or admitted and, if disputed, to provide citations to admissible evidence in the record supporting the claim of a factual dispute. To this end, Brown and Gorey complied with Local Rule 56(B) by setting forth statements of undisputed material facts in separately numbered paragraphs in their supporting memorandum. Plaintiff then responded, as required by the Local Rules, by submitting a list of all material facts that Plaintiff contends are disputed with citations to the record. Accordingly, the following statement of facts is derived from a careful review of Brown and Gorey's statement of undisputed facts and Plaintiff's response. The undisputed facts are as follows:[3]

1. Plaintiff Aleron Group, LLC ("Plaintiff") is a Florida limited liability company owned and operated by Erik Weinstein and Kyaw "Keith" Thurein.

2. Defendants Jason Gorey and Greg Brown are two individuals who knew Thurein prior to the COVID-19 pandemic.

3. On March 23, 2020, Gorey, who was trying to connect a hand sanitizer supplier with a purchaser, contacted Defendant David Ferguson. Ferguson represented to Gorey that his company, Ferguson Transportation & Logistics, LLC, was able to coordinate among providers of ethanol, trucking, distilleries, bottles, packaging, and distribution

---

[3] Many of Brown and Gorey's asserted facts and Plaintiff's disputes in response concern actions by Ferguson, who is not a party to the motion for summary judgment currently at issue. Those asserted facts and Plaintiff's disputes are immaterial to Brown and Gorey's motion for summary judgment and accordingly have been omitted from the list of undisputed facts.

    channels for hand sanitizer.[4]

4. Separately, Thurein expressed to Brown at the beginning of the pandemic that Thurein's business, Aleron, was seeking to purchase hand sanitizer. On March 24, 2022, Thurein met in-person with Brown and Gorey to discuss possible suppliers of hand sanitizer. Gorey stated that an acquaintance, David Ferguson, was working on arranging the production of hand sanitizer. Gorey put Thurein in touch with Ferguson.[5]

5. On March 24, 2020, Ferguson represented to Weinstein and Thurein that Ferguson had the capacity to supply just below 200,000 bottles of hand sanitizer a day and that he had available one million 32-ounce bottles.[6]

6. On March 25, 2020, Plaintiff memorialized a brokering arrangement with Brown and Gorey by entering into a written "Teaming Agreement" with them, under which Brown and Gorey agreed to assist Plaintiff in preparing and submitting a proposal for the sale of hand sanitizer to Plaintiff's customer, IPF/WEP Sourcing, LLC ("IPF"). Brown and Gorey's role under the Teaming Agreement was to help Plaintiff find a hand sanitizer source. In pertinent part, the Teaming Agreement stated:

> This Teaming Agreement . . . establish [sic] the basis for a relationship under which the parties ("Parties") will work together for the purpose of preparing and submitting a Sales or Purchase Order or Proposal ("Proposal") for **Anabec Hand Sanitizers, Disinfectant Spray, Other Personal/Commercial/ Industrial Cleaning Products** issued by **IPF/WEP Sourcing LLP** ("Customer") for the purpose of a successful bid or sale or contract award ("Program"). In order to maximize the likelihood of presenting an effective solution for Program requirements, the Parties have agreed to pool their

---

[4] Plaintiff contends that this fact is disputed, but Plaintiff has not pointed to any record evidence disputing the conversation between Gorey and Ferguson on March 23, 2020. Instead, Plaintiff points to later text messages between Ferguson, Thurein, and Gorey. Moreover, the text messages that Plaintiff cites confirm the undisputed fact that Ferguson represented that his company could coordinate production and distribution of hand sanitizer. *See* Pl. Ex. A, Dkt. 53-1 at 170–74 (Ferguson stating in text messages that he had the capacity to procure hand sanitizer). Thus, there is no genuine dispute as to this fact.

[5] Although Plaintiff argues that this fact is disputed, Plaintiff does not actually state it disputes the fact asserted. Rather, Plaintiff attempts to add that Gorey also stated that he would "personally guarantee" for Ferguson, that Plaintiff should pay Ferguson directly, and that Ferguson would not run away with Plaintiff's money. Even if true, these facts do not create a dispute of fact, because Gorey made the statement that Ferguson would not "run away" with the money in a later text exchange, not during the March 24, 2022 meeting between Thurein, Brown, and Gorey. *See* Pl. Ex. A, Dkt. 53-1 at 182. Accordingly, there is no genuine dispute of material fact with respect to this asserted fact by Brown and Gorey. Nevertheless, Plaintiff's additional information about Gorey's later statements regarding Ferguson has been included in statement of fact ("SOF") 8.

[6] Plaintiff contends that this fact is disputed, but Plaintiff's cited record evidence confirms that Ferguson directly represented to Plaintiff that Ferguson had the capacity to supply the hand sanitizer: the cited text message from Ferguson states "We have 1 million 32 oz bottles right now" and "Capacity is right below 200,000 bottles a day." Pl. Ex. A, Dkt. 53-1 at 172. In any event, this fact is immaterial to Plaintiff's dispute with Brown and Gorey, as it only involves statements made by Ferguson. Thus, there is no genuine dispute with respect to this asserted fact by Brown and Gorey.

> complementary capabilities according to the terms and conditions herein. The parties recognize the efficiency of teaming and wish to team for the purpose of competitively responding to and executing Program requirements.

Def.'s Ex. A, Dkt. 49-1, at 1 (emphasis in original).

7. Plaintiff drafted the Teaming Agreement.

8. At no point during the discussions leading up to the execution of the Teaming Agreement did either Brown or Gorey represent to Plaintiff that Brown or Gorey could provide hand sanitizer, as neither of them had any such capability. No provision of the Teaming Agreement suggests otherwise. Brown and Gorey did state that Ferguson could provide hand sanitizer, and Gorey stated in a text message to Thurein and Brown on March 26, 2020—after the Teaming Agreement had been executed—that "I completely trust David," "I will personally guarantee the money," and "David won't run to an island" with Plaintiff's money. See Pl. Ex. A, Dkt. 53-1 at 182.

9. The Teaming Agreement also provided that if Gorey and Brown succeeded in matching Plaintiff with a sanitizer supplier acceptable to Plaintiff and IPF, and that if Plaintiff and IPF consummated a contract for hand sanitizer, Brown and Gorey would receive, collectively, 50% of Plaintiff's net profit on that deal once Brown and Gorey performed any other duties set forth in a subsequent statement of work contract.

10. The terms of the Teaming Agreement provided that Plaintiff, not Brown and Gorey, was the final decisionmaker for any hand sanitizer procurement contract into which Plaintiff entered with Plaintiff's customer, IPF. Specifically, the Teaming Agreement provided that "Contractor [Plaintiff] shall have *sole discretion* with regards to pricing the Proposal to the Customer [IPF]" and that "Contractor [Plaintiff] is to submit the most responsive Proposal practicable in accordance with the schedule set by the Parties to the Customer [IPF]." Def.'s Ex. A, Dkt. 49-1, at 2 (emphasis added). Under the terms of the Agreement, Brown and Gorey had no authority to issue purchase orders or invoices to Plaintiff's customer, IPF.[7]

11. The Teaming Agreement also provided that if Plaintiff successfully obtained a contract with IPF, then Plaintiff would attempt to negotiate subcontracts called "statements of work" with Brown and Gorey to accomplish the successful delivery of hand sanitizer to IPF which, in turn, would result in Brown and Gorey receiving 50% of Plaintiff's net profit from the deal.

---

[7] Plaintiff claims that this fact is disputed but Plaintiff does not identify any facts contradicting the terms of the Teaming Agreement, which provides that Plaintiff, not Brown or Gorey, was in charge of the relationship with IPF. Moreover, Plaintiff has agreed that Brown and Gorey "had no authority to issue any Purchase Orders or Invoices." Pl.'s Br. in Opp. to Mot. for Summ. J., Dkt. 53 at 6. Thus, there is no genuine dispute of material fact.

12. The Teaming Agreement also contains an indemnification provision which states that Brown and Gorey will

> defend, or at [Plaintiff's] option, cooperate in the defense of [Plaintiff], and hold [Plaintiff] and [Plaintiff's] personnel harmless from any resultant losses, liabilities, damages, costs, and expenses (including legal fees) resulting from any claims that arise or are alleged to have arisen as a result of: Negligent or intentional acts or omissions of [Brown and Gorey or Brown and Gorey's personnel] or breach by [Brown and Gorey] of any term of this Agreement. . . . In no event will either party be liable to the other party for any lost revenues, lost profits, incidental, indirect, consequential, special or punitive damages.

Def.'s Ex. A, Dkt. 49-1 at 4–5.

13. Gorey and Brown never observed any formal proposal submitted by Plaintiff to IPF and were never asked to edit or contribute to such a document. Brown and Gorey only learned of an agreement between Plaintiff and IPF through learning that IPF sent a deposit to Plaintiff that Plaintiff then in part submitted to Ferguson. Brown and Gorey never received any subcontract from Plaintiff that was supposed to derive from a successful agreement between Plaintiff and IPF, and to their knowledge, no such subcontract was ever drafted.[8]

14. From March 25, 2020 to March 26, 2020, Gorey and Brown learned from subsequent conversations that Plaintiff had been directly negotiating a hand sanitizer deal with Ferguson. Gorey and Brown were not privy to all of these conversations and were unaware of many of the specifics that Plaintiff and Ferguson agreed upon. Brown and Gorey played no role in setting or agreeing to specifications for the hand sanitizer order between Ferguson and Plaintiff.[9]

15. On March 26, 2020, Gorey and Brown learned that Weinstein, on Plaintiff's behalf, reached an agreement with Ferguson for hand sanitizer. Gorey and Brown also understood that Weinstein agreed to pay Ferguson a $500,000 deposit for the order.

16. Later that same day, Gorey worked with Weinstein and Ferguson to draft a purchase order from Plaintiff to Ferguson for hand sanitizer. Gorey sent a draft purchase order to Plaintiff. To Gorey's knowledge, no edits were ever made to the purchase order

---

[8] Plaintiff purports to dispute this fact without pointing to any record evidence by stating that "Gorey and Brown were not a part of Aleron and therefore, not privy to any formal documents," and that "Gorey and Brown would not have been asked to edit or contribute to any such document." Pl.'s Br. in Opp. to Mot. for Summ. J., Dkt. 53 at 8. This does not dispute Defendant's asserted fact and indeed confirms that Brown and Gorey were not responsible for Plaintiff's purchasing decisions and negotiations with IPF. Thus, there is no genuine dispute as to the asserted fact.

[9] Plaintiff attempts to dispute this fact by noting that "[a]ny correspondence with Ferguson during March 25 and 26 was merely a discussion only," and that Aleron had separately emailed Ferguson an order for hand sanitizer. Pl.'s Br. in Opp. to Mot. for Summ. J., Dkt. 53 at 8–9. This does not contradict Defendant's asserted fact and instead confirms that Plaintiff directly negotiated its order with Ferguson.

and Gorey has no knowledge of a final purchase order sent by Plaintiff to Ferguson.[10]

17. On March 27, 2020, Ferguson received Plaintiff's first deposit of $500,000, minus a $75 bank fee. For this transaction, Plaintiff used Brown as an intermediary to send the funds to Ferguson, because Brown and Ferguson shared the same bank. Ferguson received the funds later that day.[11]

18. A few days later, the hand sanitizer order between Plaintiff and Ferguson was canceled. Neither Brown nor Gorey was involved in the order cancelation.[12]

19. On April 1, 2020 and April 4, 2020, Plaintiff emailed Ferguson and requested that Ferguson return the $500,000 deposit. Plaintiff copied Brown and Gorey on these emails. Neither Brown nor Gorey ever retained any portion of Plaintiff's $500,000 deposit.[13]

20. After the hand sanitizer order between Ferguson and Plaintiff was canceled, Ferguson informed Gorey and Brown that he was trying to sell portions of the hand sanitizer he procured for Plaintiff in order to recoup his losses and make a profit. Gorey and Brown attempted to assist Ferguson in finding customers for the hand sanitizer, but neither Gorey nor Brown were ever paid for these efforts. Gorey also connected Ferguson with a warehouse to store the hand sanitizer and workers for the warehouse,

---

[10] Plaintiff attempts to dispute this fact by stating that Gorey had "simply a discussion" with Plaintiff, and that nothing was "agreed upon or finalized" based on the discussions between Gorey and Plaintiff. Pl.'s Br. in Opp. to Mot. for Summ. J., Dkt. 53 at 13. But Plaintiff does not dispute that Gorey drafted a purchase order upon Plaintiff's request. Moreover, Plaintiff confirms that Plaintiff ultimately sent a purchase order to Ferguson without including either Brown or Gorey in the communication. *See* Pl. Ex. A, Dkt. 53-1 at 60 (email from Weinstein to Ferguson and Thurein stating "[t]his is an order for . . . 8 oz of 400,000 units" of hand sanitizer).

[11] Plaintiff argues that this fact is disputed but Plaintiff only disputes whether Plaintiff sent the deposit early in the morning or in the afternoon on March 27, 2020. The timing of the payment is immaterial to Brown and Gorey's summary judgment motion and has therefore been omitted from the asserted fact, which is otherwise undisputed.

[12] The parties dispute whether Ferguson or Plaintiff canceled the order. The parties also dispute whether Plaintiff ever instructed Ferguson to make false statements to Plaintiff's customer, IPF. These disputes are immaterial to Brown and Gorey's motion for summary judgment as they only concern Ferguson, who is not a party to this motion. Plaintiff does not dispute that Brown and Gorey were not involved in the order cancelation, and the asserted fact is therefore undisputed as written.

[13] The parties dispute whether Ferguson or Plaintiff is ultimately at fault for canceling the hand sanitizer order, but the parties do not dispute that Brown and Gorey never retained any portion of Plaintiff's $500,000 deposit, which was paid by Plaintiff to Ferguson using Brown as an intermediary. Thus, the asserted fact is undisputed as written.

but Gorey was never compensated for this work.[14]

## II.

The standard for summary judgment is too well-settled to require extensive elaboration here. Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Of course, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). But disputed facts can bar summary judgment only if they are "material," which means that they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Following threshold motions to dismiss, only three of Plaintiff's claims against Brown and Gorey remain and are now at issue on summary judgment: (i) breach of contract, (ii) fraud in the inducement, and (iii) contractual indemnity. For the reasons stated below, summary judgment must enter in favor of Brown and Gorey and against Plaintiff on all three remaining counts.

## A.

Brown and Gorey first seek summary judgment on Plaintiff's breach of contract claim in Count I. As a preliminary matter, it is necessary to determine which state's law governs Plaintiff's breach of contract claim in this diversity dispute. The parties incorrectly assert that

---

[14] Plaintiff attempts to dispute Brown and Gorey's asserted fact that Brown and Gorey never received compensation for their efforts to help Ferguson sell the hand sanitizer. In this respect, Plaintiff has stated that Plaintiff believes Brown and Gorey may have profited from Ferguson's efforts to sell the hand sanitizer after the deal with Plaintiff fell through by asserting that "we have no proof that Gorey/Brown made no profits from the $500,000 . . . which Ferguson wrongly kept." Pl.'s Br. in Opp. to Mot. for Summ. J., Dkt. 53 at 23. But this unsubstantiated statement about what Plaintiff believes may have happened does not create a genuine dispute of material fact because Plaintiff has not cited a single piece of evidence in support. In this respect, it is well-established that bare speculation without any citations to record evidence cannot create a genuine dispute of material fact to overcome a motion for summary judgment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992) ("[U]nsupported speculation is not sufficient to defeat a summary judgment motion."). Thus, there is no genuine dispute as to the asserted fact.

Virginia law applies. Although federal courts sitting in diversity apply the choice-of-law rules of the state in which the court sits—here, Virginia—Virginia law "looks favorably upon choice of law clauses in a contract" and, absent exceptional circumstances not present in this case, gives them "full effect." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Here, the parties' Teaming Agreement contains a choice of law clause which states "[t]his Agreement is governed by the laws of the Country and State where the Contractor entering into the Agreement is located specifically in the State of Florida." Def.'s Ex. A, Dkt. 49-1 at 4 (emphasis in original). Accordingly, Florida law, not Virginia law, governs the contract dispute.

Under Florida law, courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). Moreover, Florida law requires a plaintiff to "point toward an express provision in the contract that creates the obligation allegedly breached." *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017). Where a plaintiff fails to do so and it is "unclear what provision or obligation under the contract has been violated," the contract claim must be dismissed. *Id.* at 1366–67.

Here, Plaintiff alleges that Brown and Gorey breached their contact with Plaintiff—the Teaming Agreement—by "failing to provide the goods [hand sanitizer] to Plaintiff upon receipt of payment." Third Am. Compl., Dkt. 38 at ¶ 61. Simply put, Plaintiff argues that because Brown and Gorey introduced Plaintiff to Ferguson, and because Ferguson failed to provide hand sanitizer to Plaintiff, Brown and Gorey breached the Teaming Agreement. This argument fails because the Teaming Agreement does not require Brown and Gorey to provide Plaintiff with any hand sanitizer or other goods. Instead, the Teaming Agreement states that Brown and Gorey "will work together" with Plaintiff "for the purpose of preparing and submitting a Sales or

8

Purchase Order or Proposal" for hand sanitizer. Def.'s Ex. A, Dkt. 49-1 at 1. Thus, the undisputed facts make clear that Brown and Gorey had no contractual obligation to provide Plaintiff with hand sanitizer; instead the Teaming Agreement is merely an agreement by Brown and Gorey to make efforts to find someone to contract with Plaintiff to fulfill Plaintiff's hand sanitizer order. Moreover, it is undisputed that Brown and Gorey fulfilled this obligation by introducing Plaintiff to Ferguson and by assisting Plaintiff in preparing a draft purchase order for a hand sanitizer order between Plaintiff and Ferguson. It is also undisputed that Brown and Gorey believed Ferguson could provide Plaintiff's desired quantity of hand sanitizer when Brown and Gorey introduced Ferguson to Plaintiff. Thus, as the undisputed factual record reflects, Brown and Gorey fulfilled their only obligation under the Teaming Agreement to work together with Plaintiff to find a hand sanitizer supplier, and Plaintiff fails to identify any portion of the contract that has been breached.[15] Accordingly, summary judgment must enter against Plaintiff on Count I.

**B.**

Brown and Gorey next seek summary judgment on Plaintiff's fraudulent inducement

---

[15] Plaintiff also alleges that Brown and Gorey failed to provide hand sanitizer to Plaintiff "upon receipt of payment," but it is undisputed that Plaintiff paid its $500,000 deposit to Ferguson, not to Brown and Gorey. Third Am. Compl. at ¶ 61. Thus, the allegation is entirely unsupported by any facts in the record and cannot preclude summary judgment.

9

claim in Count IV. Under Virginia law,[16] a plaintiff asserting a cause of action for fraudulent inducement bears the burden of proving by clear and convincing evidence the following elements at trial: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Persaud Cos., Inc. v. IBCS Grp., Inc.*, 425 F. App'x 223, 226 (4th Cir. 2011) (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). And of course, where a "party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial," summary judgment is mandated by Rule 56(c), Fed. R. Civ. P. *Celotex*, 477 U.S. at 323.

Summary judgment must enter in favor of Brown and Gorey on Plaintiff's fraudulent inducement claim in Count IV because Plaintiff has failed to point to evidence in the record supporting the first element of Plaintiff's fraudulent inducement claim, namely that Brown and Gorey made any false representation to Plaintiff. In the Third Amended Complaint, Plaintiff alleges that Brown and Gorey made two false statements to induce Plaintiff to execute the Teaming Agreement: (i) Brown and Gorey represented that Ferguson owned or otherwise represented a manufacturer of hand sanitizer, and (ii) Brown and Gorey stated that Ferguson had the ability to procure hand sanitizer and bottles. Third Am. Compl. at ¶¶ 16–27. Plaintiff alleges

---

[16] The parties correctly agree that Virginia law applies to Plaintiff's fraudulent inducement claim. In Virginia, "where a cause of action arises in tort, Virginia applies the law of the state where the tortious conduct or injury occurred." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999). In some cases, if a choice of law clause is "sufficiently broad," it can "encompass contract-related tort claims such as fraudulent inducement." *Id.* Here, however, the Teaming Agreement's choice-of-law clause is narrow and does not encompass Plaintiff's fraudulent inducement claim. Thus, the Virginia's *lex loci delicti* rule applies and the law of the state where the allegedly fraudulent statements were made governs. Although the record does not clearly indicate where Brown and Gorey made the alleged statements, Brown and Gorey both reside in Virginia and it is therefore reasonable to assume that their statements were made in Virginia. In any event, even if Florida law applied to Plaintiff's fraudulent inducement claims, it would not alter the conclusion here in any way because Florida law requires the same elements for fraudulent inducement as Virginia law. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1315 (11th Cir. 1998) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

in the Amended Complaint that these statements are false because Ferguson did not own or represent a manufacturer of hand sanitizer and did not have the capacity to procure hand sanitizer and bottles. *Id.*

Plaintiff's argument fails and summary judgment must enter in favor of Brown and Gorey on Count IV because Plaintiff has not identified *any* record evidence supporting the Third Amended Complaint's allegations of false statements by Brown and Gorey. With respect to the first alleged false statement—that Brown and Gorey misrepresented the relationship Ferguson had with a hand sanitizer manufacturer—Plaintiff has only cited alleged statements by *Ferguson* in opposition to Brown and Gorey's motion for summary judgment. Specifically, Plaintiff cites text messages from Ferguson stating that Ferguson has the capacity to produce hand sanitizer and that "[w]e are making more every day," which Plaintiff characterizes as Ferguson holding himself out as the manufacturer rather than the supplier. Pl.'s Ex. A, Dkt. 53-1 at 170–72. But Ferguson's statements are wholly irrelevant to Plaintiff's fraudulent inducement claim against Brown and Gorey, and Plaintiff has not cited a single piece of evidence in the summary judgment record demonstrating that Gorey and Brown misrepresented Ferguson's relationship to the hand sanitizer manufacturer.

Nor has Plaintiff cited any record evidence to support the second alleged false statement; namely, that Brown and Gorey misrepresented that Ferguson had the ability to procure hand sanitizer for Plaintiff. In attempting to overcome summary judgment in this respect, Plaintiff cites three pieces of record evidence: an affidavit from Thurein, an affidavit from Weinstein, and a series of text messages from Gorey and Brown. But none of these exhibits creates a genuine dispute that Brown and Gorey misrepresented Ferguson's ability to procure hand sanitizer. First, the affidavits from Thurein and Weinstein both state—in identical language, inviting the

11

inference that the affidavits were drafted by an attorney—a conclusory allegation that "Gorey and Brown . . . continued to misrepresent to [Plaintiff], Ferguson's capabilities in regards to the hand sanitizer transaction in question." Pl.'s Ex. B, Dkt. 53-2 at ¶ 6; Pl.'s Ex. C, Dkt. 53-3 at ¶ 6. This conclusory statement, which does not provide any information about the time, place, or specific contents of the alleged false statements by Brown and Gorey, cannot defeat summary judgment on Plaintiff's fraud claim. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1042 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); *see also DeGirolamo v. Sanus Corp. Health Sys.*, 935 F.2d 1286, at *4 (4th Cir. 1991) (unpublished) (citing *Anderson*, 477 U.S. at 254–55) (explaining that to withstand a motion for summary judgment, a plaintiff must provide clear and convincing evidence in support of fraud claim).

In addition to Thurein and Weinstein's affidavits, Plaintiff also cites text messages from Brown and Gorey. *See* Pl.'s Ex. A, Dkt. 53-1 at 181, 185, 186. But these text messages also fail to create a dispute of fact with respect to Plaintiff's fraudulent inducement claim. This is so because in order to establish the first element of a fraudulent inducement claim and overcome a motion for summary judgment, Plaintiff must identify false statements made *before* the parties entered into the contract. *See Devine v. Buki*, 767 S.E.2d 459, 467 (Va. 2015) (explaining that for a fraudulent inducement claim, the misrepresentation "must necessarily precede the formation of the contract"). Plaintiff has plainly failed to do so here because the text messages that Plaintiff relies on are dated March 28, 2020 and April 3, 2020—days *after* Plaintiff signed the Teaming Agreement on March 25, 2020. *See* Pl.'s Ex. A, Dkt. 53-1 at 181–186. Thus, text messages

postdating the Teaming Agreement cannot support Plaintiff's fraudulent inducement claim.[17] Moreover, the text messages Plaintiff cites do not contain statements by Brown and Gorey supporting Plaintiff's allegation that Brown and Gorey misrepresented Ferguson's ability to procure hand sanitizer. Instead, the text messages contain statements from Gorey regarding logistics for delivery of the hand sanitizer and Plaintiff's requested refund of the $500,000 deposit from Ferguson. *See* Pl.'s Ex. A, Dkt. 53-1 at 181, 185, 186. Thus, the text messages do not create a genuine dispute of material fact in order to prevent summary judgment.

Seeking to avoid this conclusion, Plaintiff cites paragraphs of the Third Amended Complaint which allege that Brown and Gorey "represented to Thurein that Ferguson owned or otherwise represented a manufacturer of hand sanitizer and hand the ability to procure hand sanitizer solution and bottles." Third Am. Compl., Dkt. 38 at ¶ 16. Yet these citations to the Third Amended Complaint do not suffice to overcome summary judgment because it is well-established that "[a]llegations contained in the pleadings do not create an issue sufficient to overcome a summary judgment motion supported by affidavits." *Pelphrey v. United States*, 674 F.2d 243, 247 (4th Cir. 1982) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Because Plaintiff has not adduced any admissible record evidence of any false statements by Brown and Gorey which induced Plaintiff to execute the Teaming Agreement, Plaintiff has failed to "make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex*, 477 U.S. at 323. Brown and Gorey are therefore entitled to summary judgment on Count IV.

---

[17] For the same reason, Gorey's text messages in SOF 8 from March 26, 2020 stating, "I completely trust David," "I will personally guarantee the money," and "David won't run to an island" with Plaintiff's money cannot support Plaintiff's fraudulent inducement claim because the statements occurred *after* the parties executed the Teaming Agreement on March 25, 2020. See Pl. Ex. A, Dkt. 53-1 at 182.

## C.

Finally, summary judgment must also enter in favor of Brown and Gorey on Plaintiff's contractual indemnification claim in Count X. Plaintiff claims that Brown and Gorey must "indemnify [Plaintiff] from any lawsuits" pursuant to an indemnification provision in the Teaming Agreement. Third Am. Compl. ¶ 95. Specifically, Plaintiff cites an indemnification provision stating that Brown and Gorey

> will defend, or at [Plaintiff's] option, cooperate in the defense of [Plaintiff], and hold [Plaintiff] and [Plaintiff] personnel harmless from any resultant losses, liabilities, damages, costs, and expenses (including legal fees) resulting from any claims that arise or are alleged to have arisen as a result of . . . [n]egligent or intentional acts or omissions of [Brown and Gorey] or [Brown and Gorey's] personnel or breach by [Brown and Gorey] by any term of this Agreement.

Def.'s Ex. A, Dkt. 49-1, at 4.

Plaintiff's argument that Brown and Gorey must indemnify Plaintiff pursuant to this clause in the Teaming Agreement fails to persuade. It is well-established under Florida law[18] that "[a] contract for indemnity is an agreement by which the promisor agrees to protect the promise against loss or damage by reason of liability to a *third party*." *Dade County Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 643 (Fla. 1999) (emphasis added). As the Eleventh Circuit has explained, this means that indemnification clauses generally "apply only to liability for claims brought by third parties, and not to suits between the contracting parties." *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1337 (11th Cir. 2018) (applying Florida law). In order to depart from this "default position" and extend contractual indemnity to claims between the contracting parties themselves, parties to an indemnification agreement must use "clear and unequivocal terms." *BVS Acquisition Co. v. Brown*, 649 F. App'x 651, 654 (11th Cir. 2016)

---

[18] Florida law governs the interpretation of the indemnification clause in the Teaming Agreement pursuant to the contract's choice-of-law clause explicitly stating that the contract is governed by the laws of the State of Florida. *See* Def.'s Ex. A, Dkt. 49-1 at 4.

14

(quoting *Univ. Plaza Shopping Ctr. v. Stewart*, 272 So. 2d 507, 510 (Fla. 1973)). In the absence of such clear language, courts applying Florida law "will presume no such coverage." *Brown*, 649 F. App'x at 654. And as the Eleventh Circuit has explained, Florida's "clear-and-unequivocal standard is difficult to meet," and "broad but general language is insufficient." *Id.* Accordingly, courts applying Florida law have repeatedly held that agreements with general language providing indemnification for "any and all claims" do *not* contain sufficiently clear and unequivocal terms to depart from the default position of excluding indemnity for claims between the two contracting parties. *See, e.g.*, *Cox Cable Corp. v. Gulf Power Co.*, 591 So. 2d 627, 629 (Fla. 1992); *Stewart*, 272 So. 2d at 508–09; *Gulf Oil Corp. v. Atl. Coast R.R. Co.*, 196 So. 2d 456, 457 (Fla. Dist. Ct. App. 1967).

Here, the Teaming Agreement does not contain the requisite clear and unequivocal language necessary to express an intent to depart from the default rule and extend indemnification to claims between the contracting parties. The indemnification provision of the Teaming Agreement states that Brown and Gorey will defend and indemnify Plaintiff from "any resultant losses" resulting from negligent or intentional acts of Brown and Gorey. Def.'s Ex. A, Dkt. 49-1, at 4. This is precisely the sort of "broad but general" language that the Eleventh Circuit has held does not meet Florida's "clear-and-unequivocal" language requirement. *Brown*, 649 F. App'x at 654–55. Indeed, the language in the Teaming Agreement—which only extends indemnity to "*any* claims"—is even narrower than the "any *and all*" language that Florida courts have held is insufficient to express an intent to depart from the default rule. *See, e.g.*, *Cox*, 591 So. 2d at 629 (emphasis added). Finally, it is undisputed that Plaintiff drafted the Teaming Agreement, and "Florida law provides that ambiguities should be construed against the drafter of the contract." *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*,

15

117 F.3d 1328, 1338 (11th Cir. 1997). This principle confirms that the indemnification provision is appropriately construed against Plaintiff and interpreted as limited to third-party claims. Thus, because the Teaming Agreement follows the default rule and does not apply to claims between the contracting parties, Brown and Gorey are entitled to summary judgment on Count X.

### III.

In conclusion, Brown and Gorey's Motion for Summary Judgment must be granted on all three counts because the undisputed facts make clear that Brown and Gorey did not breach any contractual agreement with Plaintiff, nor did Brown and Gorey fraudulently induce Plaintiff into signing the Teaming Agreement. Instead, Brown and Gorey merely acted, as required by the Teaming Agreement, as brokers: they introduced Plaintiff to Ferguson, who Brown and Gorey believed had the capacity to produce Plaintiff's desired quantity of hand sanitizer. Brown and Gorey never retained any of Plaintiff's $500,000 deposit to Ferguson, nor did Brown and Gorey profit from the failed hand sanitizer deal between Plaintiff and Ferguson. Finally, the parties' indemnification agreement in the Teaming Agreement does not extend to claims between the contracting parties under Florida law and is only limited to third party claims. Accordingly, summary judgment must enter in favor of Brown and Gorey and against Plaintiff on Counts I, IV, and X of the Third Amended Complaint.

Although summary judgment will enter in favor of Brown and Gorey for the only remaining claims against them in Plaintiff's Third Amended Complaint, this does not end Brown and Gorey's involvement in this case. Brown and Gorey have also filed, along with Defendant Ferguson,[19] a Counterclaim against Plaintiff and a Third-Party Complaint against Plaintiff's

---

[19] Ferguson has also filed a Motion for Leave to Amend Answer, Counterclaim, and Third-Party Claim, which will come before the Court for a hearing on Friday, August 4, 2023. *See* Mot. for Leave to Amend Answer, Dkt. 92; Order Issued July 21, 2023, Dkt. 99; Order Issued July 25, 2023, Dkt. 101.

principals, Erik Weinstein and Keith Thurein. *See* Def.'s Answer, Affirmative Defenses, Countercl. and Third Party Compl., Dkt. 43. Plaintiffs Aleron, Weinstein, and Thurein have not filed any dispositive motion with respect to Defendants Brown, Gorey, and Ferguson's counterclaim against Aleron and third-party complaint against Weinstein and Thurein, so the matter will proceed to trial. No trial date has been set for Defendants' counterclaim and third-party complaint, but a final pretrial conference is scheduled to occur on Thursday, August 24, 2023, during which time a trial date will be selected should one remain necessary at that point.

An appropriate Order will enter.

The Clerk of the Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
July 28, 2023

/s/
T. S. Ellis, III
United States District Judge